**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-10-0507-HE |
| TRAVIS RUTLEDGE, ET AL., | ) ) | |
| Defendants. | ) | |

## ORDER

In the case, plaintiff American Economy Insurance Company ("American Economy")

seeks a declaratory judgment establishing the maximum coverage available to its insured,

defendant Boiling Springs Golf Course, Inc. ("Boiling Springs"), in connection with claims

being asserted against Boiling Springs in a state court suit now pending in the District Court

of Woodward County, Oklahoma. The plaintiffs in the state case, who are among the

defendants here, are Travis and Lisa Rutledge ("the Rutledges"), the parents and next friends

of T.B.R., who was a minor at the time of the events giving rise to that lawsuit.

The state court lawsuit is based upon a motor vehicle accident which occurred in

Woodward County on August 23, 2009. According to the petition in that case,[1] the

Rutledges allege that Boiling Springs employed Dennis Bates as its manager and golf

professional at the time of the incidents in question.[2] They allege that Bates provided alcohol

---

[1]*The state court petition is exhibit 2 to plaintiff's motion. Doc. #82-2.*

[2]*Bates, like Boiling Springs, is also a defendant in this case. However, only the Rutledges have actively contested plaintiff's request for a declaratory judgment.*

to T.B.R. on August 22 and 23, 2009,[3] that defendants Boiling Springs and Bates had previously allowed minors to consume alcohol at the golf course, and that, as a direct result of defendants serving alcohol to T.B.R. or allowing her to consume it, she drove her vehicle while under the influence of alcohol, driving it off the road and into a tree. The petition indicates T.B.R. suffered spinal cord and other injuries as a result of the wreck and that she is today a paraplegic. The petition also alleges Boiling Springs was negligent in its supervision of Bates and that it knew or should have known of his selling or providing alcohol to minors.

Plaintiff American Economy has moved for summary judgment, seeking a declaration that its policy "provides coverage for the claims being asserted by the plaintiffs in the Woodward County, Oklahoma, case in the amount of $1,000,000." Complaint [Doc. #1]. The Rutledges have responded in opposition, arguing that coverage of at least $2,000,000 is available under the policy. American Economy filed a reply brief and the Rutledges filed a sur-reply. Also pending is the Rutledges' motion [Doc. #93] to stay further proceedings in this case pending the completion of the state case.

<u>Discussion</u>

The standard applicable to a summary judgment motion is familiar. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant

---

[3]*The parties' submissions indicate that T.B.R., who was 17 at the time, had a summer job at the golf course, that she worked a golf tournament on August 22, 2009, and that Bates and T.B.R. drank substantial amounts of beer the afternoon and evening of the 22nd after the tournament ended. A friend of T.B.R.'s was eventually called to pick her up and did so, but thereafter T.B.R. drove her own vehicle at some point. The wreck occurred in the early morning hours of August 23.*

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The court views the evidence and draws reasonable inferences therefrom in the light most favorable to the non-moving party.  Simms v. Okla. ex rel. Dep't of Mental Health & Subst. Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).  Summary judgment is inappropriate if a rational factfinder could find in favor of the nonmoving party based on the evidence presented.  Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000).  Applying these standards to the present circumstances, the court concludes plaintiff's motion should be granted.  Further, the court concludes there is no persuasive reason to stay a determination here pending completion of the state proceedings.

There is no dispute that Oklahoma law applies to the interpretation of the insurance policy at issue in this diversity case.  Under Oklahoma law, the principle is well established that insurance policies are contracts and subject to the rules for interpretation of contracts.  Cranfill v. Aetna Life Ins. Co., 49 P.3d 703, 706 (Okla. 2002).  The purpose of contract interpretation is to give effect to the manifest intentions of the parties.  Where policy language is ambiguous or where limiting language is "masked by technical or obscure language" or "hidden in a policy's provisions", the contract will be interpreted consistent with the reasonable expectations of a person in the position of the insured.  Max True Plastering Co. v. USF & G Co., 912 P.2d 861 (Okla. 1996).  Parties to an insurance contract are free to contract for such risks as they see fit and they are bound by the terms of the contract.  Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla. 1974).  Courts are not at liberty to rewrite the policy for the parties where it is otherwise unambiguous.  *See generally*

Amer. Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).[4]

In arguing that there is a maximum of $1,000,000 in coverage available, American Economy relies principally on the policy provision specifically directed to liquor liability — the Liquor Liability Coverage Form. [Doc. #81-5, p. AE 077].[5] That provision obligates the insurer to pay those sums its insured becomes obligated to pay "by reason of the selling, serving or furnishing of any alcoholic beverage." The insurer's obligation is limited as described in "Section III - Limits of Insurance." Section III states, in pertinent part:

1.    The Limits of insurance shown in the Declaration and the rules below fix the most we will pay regardless of the number of:

    a.  insureds

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

2.    The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

3.    Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

[Doc. #81-5, p. AE 080]. The declarations page of the policy sets the "Aggregate Limit" at

---

[4]*Defendants' suggestion that the court should interpret the contract based on the extent of T.B.R.'s injuries — or that it is "repulsive" for plaintiff to argue for a lower limit in light of those injuries (Doc. #86 at p. 1) — is inappropriate under the pertinent standards. The question here is what coverage American Exchange and Boiling Springs agreed to.*

[5]*The policy involved is an "Ultra Series Package Policy". The commercial general liability provisions of the policy are in issue here.*

$2,000,000 and the "Each Common Cause Limit" at $1,000,000. American Economy argues the Each Common Cause Limit of $1,000,000 is applicable here, because all injuries claimed are the result of furnishing alcoholic beverages to one person — T.B.R.

In the court's view, the plain language of the policy, in particular the Each Common Clause Limit, provides a maximum of $1,000,000 in coverage applicable to the Rutledge's claims as asserted in the Woodward County case. The petition in that case explicitly states that T.B.R.'s injuries are the "direct result of Defendant's serving alcohol to and/or allowing [her] to consume alcoholic beverages" [petition, para. 11; Doc. #82-2]. Further, to the extent that Mr. and Mrs. Rutledge assert claims in their individual capacities, their claimed injuries and damages stem from the injuries to T.B.R. The undisputed facts show the circumstances of the underlying accident, as alleged in the state court petition, fall squarely within the indicated limiting language. The language of the policy is not ambiguous nor is the pertinent language hidden or overly technical.

The Rutledges make various arguments in an effort to avoid the $1,000,000 limit imposed by the Each Common Cause Limit. They argue there were adults other than Bates at the golf tournament (and after it concluded) who were served too much alcohol, that some of them were board members of defendant Boiling Springs, and that, but for the excess alcohol, they might have intervened in some way to protect T.B.R. from what ultimately happened. While that claimed basis for liability differs from a straight "respondeat superior" theory of liability, based on Bates' furnishing of beer to T.B.R., it nonetheless leads to an injury sustained by T.B.R. as a direct result of her being provided alcohol. As such, it is still

5

within the scope of the limiting language of the Each Common Cause Limit.

Similarly, the Rutledge's reliance on a "failure to supervise" theory leads to the same result. While T.B.R.'s injuries might have been avoided if Boiling Springs had supervised Bates more closely or fired him prior to the incident or refused to hire him in the first place, all of T.B.R.'s injuries as alleged in the state case nonetheless stem from her having been furnished alcohol by Bates. The question here is not whether there are multiple theories by which Boiling Springs or Bates might be held liable by T.D.R./the Rutledges — there may well be. Rather, the question here is what portion of Boiling Springs' potential liability American Economy is liable for under the insurance contract. To the extent the Rutledge's state case and claimed damages are based on injuries to T.B.R. suffered by reason of the provision of alcohol to her, they are within the scope of the Each Common Cause Limit and hence the $1,000,000 limit of coverage.

In a further effort to avoid this limit, the Rutledges argue their state claims are also based on theories other than the provision of alcohol to T.B.R. and hence are outside the scope of the alcohol-limiting language. In particular, they argue that Bates violated club policy when he allowed minors like T.B.R. to stay on the golf course after dark and that Bates sexually harassed and/or assaulted T.B.R. However, there is no hint in the state court petition that either of those theories have been asserted by the Rutledges. Further, there is no apparent connection between those theories, even if they were asserted, and the coverage dispute presently before this court, which involves the coverage available for the extensive injuries suffered by T.B.R. as a result of the car accident.

In short, defendants offer no persuasive argument as to why any limit other than that set out in the liquor liability provisions of the policy, and in particular the limit set out in the Each Common Cause Limit, should apply to the claims asserted in the Woodward County case. Further, there is no indication that the Rutledges are seeking to change the nature of the claims asserted in the state case. There is therefore no reason to defer a determination of the issues raised here as to the available coverage.

## Conclusion

Applying the standards of Oklahoma law to the present dispute, the court concludes plaintiff's motion for summary judgment [Doc. #81] should be **GRANTED**. The court declares that the maximum coverage available under Policy #02-CE-192212-20 to the claims now asserted in the pending Woodward County district court case is $1,000,000. Defendants' motion to stay further proceedings here [Doc. #93] is **DENIED**.

**IT IS SO ORDERED**.

Dated this 6th day of June, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE